2003-NMCA-016

62 P.3d 290

Carolyn BANKS, Worker–Appellant,

v.

IMC KALIUM CARLSBAD POTASH CO. and Crawford & Company, Employer/Insurer–Appellee.

No. 21,437.

Court of Appeals of New Mexico.

Sept. 6, 2002.

Certiorari Granted, No. 27,714, Oct. 24, 2002.

Royce E. Hoskins, Roswell, NM, for Appellant.

Timothy E. Kapshandy, Sidley, Austin, Brown & Wood, Chicago, IL, Thomas L. Marek, Marek, Francis & Byers, P.A., Carlsbad, NM, for Appellee.

*OPINION*

ROBINSON, Judge.

{1} The opinion filed in this case on May 9, 2002 is hereby withdrawn and the following substituted therefor. The motion for rehearing is denied.

{2} This case presents an issue of first impression concerning the standard of admissibility for the testimony of a treating physi-

cian in cases adjudicated by the Workers' Compensation Administration (the Administration). We hold that the standards for the admissibility of expert testimony adopted by the United States Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and by the New Mexico Supreme Court in *State v. Alberico,* 116 N.M. 156, 861 P.2d 192 (1993) (hereinafter, the *Alberico/Daubert* standard), cannot be applied in cases adjudicated by the Administration because to do so would violate the provisions of the Workers' Compensation Act (WCA), NMSA 1978, §§ 52–1–1 to –70 (1929, as amended through 2001) and the Occupational Disease Disablement Law (ODDL), NMSA 1978, §§ 52–3–1 to –60 (1945, as amended through 2001). Consequently, we reverse.

## I. *Factual Background and Proceedings Below*

{3} Because the merits of this case were not heard by the Administration, the Workers' Compensation Judge (WCJ) entered no findings or conclusions on the underlying claim. The following is provided by way of background only and is not binding on the WCJ on remand. We have gathered this information from the materials submitted in connection with the motion for summary judgment.

{4} Worker went to work for IMC Kalium Carlsbad Potash Company (IMC) in June 1974. She worked underground in the potash mines at progressively more responsible jobs until early in 1996. During those twenty-two years as an underground miner, Worker was exposed to diesel fuel fumes and nitrate smoke created by the explosions of ammonium nitrate used to blast the ore out of the "face." Over the years, Worker developed a cough and had difficulty breathing, particularly when underground. In her deposition, Worker testified that in 1994 she was diagnosed with asthma. At the time, no one suggested that problem was work-related. At about that time, her family doctor, Dr. Perkowski, advised her to stop working underground. Nevertheless, Worker continued to work underground and her cough and difficulty breathing persisted.

{5} By 1996, Worker's problems had increased to the point that, at her request, she was put on temporary duty working above ground in the main office. Ultimately, Worker's respiratory condition became so severe that she was no longer able to work. In 1997, Worker's doctor referred her to National Jewish Hospital in Denver for evaluation. Dr. Fennelly at National Jewish Hospital was of the opinion "that her exposures to nitrogen oxide, particulates and other respiratory irritants in the underground mining processes have continued to aggravate her airway inflammation." In addition, her chest x-ray showed bronchial wall thickening, consistent with asthma.

{6} Worker began seeing Dr. Ross at the Environmental Health Center in Dallas, Texas in February 1998. On July 17, 1998, Worker filed her benefit claim with the Administration for an occupational disease under the ODDL. Dr. Ross was identified as her treating physician. Dr. Ross diagnosed Worker as suffering from: (1) toxic encephalopathy; (2) reactive airway dysfunction syndrome (RADS); (3) asthma; and (4) chemical sensitivity as a result of exposure to solvents.

{7} On February 22, 2000, Respondents moved to exclude the testimony and medical report of Dr. Ross and any evidence relating to the tests that he had relied on in making his diagnoses. Respondents argued that Dr. Ross' testimony could not meet the *Alberico/Daubert* standard for the admission of expert testimony pursuant to Rule 11–702 NMRA 2002. In support of their brief, Respondents filed numerous appendices, including reports from various health care providers and three Independent Medical Examiners (IMEs), letters from other health care providers to Respondents' counsel, articles from professional journals, statements from various medical organizations, and other documents. This extensive documentation tended to indicate that some of Dr. Ross' diagnoses were not recognized as valid by other health care providers and that, in the opinion of these health care providers, the tests he used had not been established as sufficiently reliable.

{8} In her response, Worker argued that, as an authorized healthcare provider, Dr.

Ross could testify concerning his diagnosis and the causal connection between the work conditions and the diseases. In addition, she contended that the *Alberico/Daubert* standard did not apply to workers' compensation cases.

{9} Ultimately, the WCJ determined that the *Alberico/Daubert* standard applied and that Dr. Ross' testimony was not admissible under that standard. Accordingly, the WCJ held that Dr. Ross could not testify. By statute, the only medical experts who can testify at hearings before the Administration are treating physicians and those providers who have been properly authorized as IMEs. *See* Section 52–1–51(C); Section 52–3–39(C). Thus, the WCJ's ruling left Worker without anyone to testify on her behalf. Respondents filed a motion for summary judgment on this basis. The summary judgment motion was granted. This appeal followed.

## II. *Discussion*

*The Alberico/Daubert Standard Does Not Apply to Proceedings Before the Workers' Compensation Administration.*

{10} Before 1993, expert testimony was admissible under Rule 11–702 of the Federal Rules of Evidence if the technique or methodology was generally accepted as reliable in the relevant scientific community. *Frye v. United States*, 293 F. 1013, 1014 (D.C.Cir.1923). In 1993, the United States Supreme Court in *Daubert* rejected the *Frye* test and replaced it with a two-part inquiry focused on the relevance of the scientific or other specialized knowledge and the scientific reliability of the method or technique. *Daubert* contemplated that the trial judge would act as gatekeeper, making a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93, 113 S.Ct. 2786. In *Alberico*, the New Mexico Supreme Court adopted the *Daubert* inquiry, holding that:

the proper inquiry under Rule 702 is whether the subject of the expert's testimony is grounded in valid, objective science, that is "scientific, technical or other specialized knowledge," and whether the underlying scientific technique or method is reliable enough to prove what it purports to prove, that is probative, so that it will assist the trier of fact.

*Alberico*, 116 N.M. at 168, 861 P.2d at 204. The *Alberico/Daubert* analysis is not limited to novel scientific theories. *State v. Torres*, 1999–NMSC–010, ¶ 29, 127 N.M. 20, 976 P.2d 20; *accord Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

{11} Whether the *Alberico/Daubert* standard applies to cases under the WCA or the ODDL is a question of law that this Court reviews de novo. *Torres*, 1999–NMSC–010, ¶ 28, 127 N.M. 20, 976 P.2d 20. The few jurisdictions that have addressed similar issues in the context of workers' compensation proceedings before administrative agencies have reached varying results. A number of jurisdictions have not adopted the *Daubert* standard for expert testimony and have continued to used the *Frye* test. *See Post–Daubert Standards for Admissibility of Scientific and other Expert Evidence in State Courts*, 90 A.L.R. 5th 453 (2001). Three jurisdictions that apply the *Frye* test generally have applied it to compensation proceedings, emphasizing that it only applies to novel scientific theories. *U.S. Sugar Corp. v. Henson*, 823 So.2d 104, 109 (Fla.2002) (emphasizing that the *Frye* standard applies only when an expert attempts to render an opinion that is based upon new or novel scientific techniques); *City of Aurora v. Vaughn*, 824 P.2d 825, 826 (Colo.App.1991) (indicating that the *Frye* standard is a "special foundation requirement for *novel* or new scientific devices or processes involving the evaluation of physical evidence" (emphasis in the original)); *K–Mart Corporation v. Morrison*, 609 N.E.2d 17, 23–26 (Ind.Ct.App.1993) (holding that infrared thermography has not gained general acceptability in the medical communities that have evaluated this technique for their purposes and, therefore, is deemed inadmissible in Indiana under *Frye*). On the other hand, Nebraska, which applies the *Frye* standard, has held that it does not apply to compensation proceedings because those proceedings are not governed by the rules of evidence.

*Sheridan v. Catering Management, Inc.*, 252 Neb. 825, 566 N.W.2d 110, 114 (1997).

{12} Jurisdictions that have adopted the *Daubert* standard or some variation on it are no more uniform in their treatment of its application to compensation proceedings. Connecticut has held that the *Daubert* standard does not apply in compensation cases because it would be contrary to the spirit of a statute providing that the commission is not bound by common law or statutory rules of evidence or procedure. *Mulroy v. Becton Dickinson Co.*, 48 Conn.App. 774, 712 A.2d 436, 439(998). In a similar vein, Kansas has held that neither *Frye* nor *Daubert* applies in administrative compensation proceedings because the rules of evidence do not apply. *Armstrong v. City of Wichita*, 21 Kan.App.2d 750, 907 P.2d 923, 929 (1995).

{13} We have been unable to find any jurisdiction that has held that medical testimony in administrative compensation proceedings must meet the *Daubert* standard in order to be admissible. However, Massachusetts has adopted "the basic reasoning of *Daubert*" as an alternative way of establishing the admissibility of testimony that does not meet the *Frye* standard. *Commonwealth v. Lanigan*, 419 Mass. 15, 641 N.E.2d 1342, 1349 (1994). Massachusetts has held that the *Lanigan* standard applies to compensation proceedings. Thus, in order to introduce scientific evidence in compensation proceedings, the worker must either establish general acceptance in the scientific community or demonstrate the reliability or validity of the evidence through alternate means. *Canavan's Case*, 432 Mass. 304, 733 N.E.2d 1042, 1048 (2000)(holding that an administrative judge abused his discretion in admitting the testimony of a physician that the worker suffered from multiple chemical sensitivities (MCS) and that the MCS was caused by the worker's exposure to chemicals in the workplace because the administrative judge failed to conduct a *Lanigan* analysis of the physician's testimony).

{14} Respondents point out that the Administration has, by regulation, adopted the rules of evidence for the district courts "[u]nless otherwise stated or necessarily implied in the preceding rules." 11 NMAC 4.4.12.15.1 (1996). *Alberico* and its progeny interpret Rule 11–702. Therefore, Respondents argue, the *Alberico* standards of relevance and reliability are encompassed in the adoption of the evidence rules and should apply. However, Respondents' argument is not persuasive because it fails to consider the impact that the application of the *Alberico/Daubert* standard would have on the statutory scheme of the WCA and the ODDL.

{15} Worker argues that, by statute, Dr. Ross is entitled to testify because he is a licensed physician and her treating physician. In support of this, Worker relies on Section 52–1–28(B) (1987). That subsection provides:

> B. In all cases where the employer or his insurance carrier deny that an alleged disability is a natural and direct result of the accident, the worker must establish that causal connection as a probability by expert testimony of a health care provider, as defined in Section 52–4–1 NMSA 1978, testifying within the area of his expertise.

The ODDL has a similar provision that requires the worker to "establish [the] causal connection as a medical probability by medical expert testimony." Section 52–3–32. The WCJ cited both Sections 52–1–28 and 52–3–32 in her order. We agree with the WCJ that the two sections should be construed to mean the same thing. *See Ramirez v. IBP Prepared Foods*, 2001–NMCA–036, ¶ 16, 130 N.M. 559, 28 P.3d 1100 (construing the WCA as a whole to achieve internal consistency and avoid rendering any part superfluous).

{16} Similarly, Worker points out that the phrase "health care provider" is defined in NMSA 1978, § 52–4–1 (1993) as a person who is licensed, certified or registered as a provider of certain specified medical services. The statutory definition includes optometrists, chiropractors, dentists, physicians, podiatrists, osteopathic physicians, physician assistants, nurse practitioners, physical therapists, occupational therapists, doctors of oriental medicine, psychologists and nurse-midwives. Practitioners of those disciplines who are licensed in other states may testify in compensation cases. *Coslett v. Third St. Grocery*, 117 N.M. 727, 729–33, 876 P.2d 656, 658–62 (Ct.App.1994). The statutory focus,

therefore, is on persons who are licensed or otherwise recognized as qualified to actually care for patients.

{17} Thus, in Worker's view, the legislature by statute has already decided who can testify in workers' compensation and ODDL cases; consequently, there is no need for additional gatekeeping. Dr. Ross is a licensed physician and has been treating Worker. Therefore, Worker argues that Dr. Ross is entitled by statute to testify on the issue of the causal connection. Worker points out that this is all that has been required for many years. For example, in *Fuyat v. Los Alamos Nat'l Lab.* 112 N.M. 102, 105–06, 811 P.2d 1313, 1316–17 (Ct.App. 1991), this Court affirmed the WCJ's decision not to apply the *Frye* standard to workers' compensation proceedings. In *Fuyat,* we held that the testimony of licensed physicians with experience treating patients with similar symptoms was admissible, even though the doctors practiced in a field that was not recognized by the American Medical Association.

{18} We need not resolve the question of what standard applied to the admission of testimony from treating physicians in the past. Since the enactment of what is now codified as Section 52–1–28(B), compensation cases have been subject to the "uncontradicted medical evidence" rule, under which the finder of fact is not allowed to reject uncontradicted medical evidence that the disability is causally connected to the accidental injury. *See Ross v. Sayers Well Servicing Co.,* 76 N.M. 321, 326–27, 414 P.2d 679, 684–85 (1966) (discussing the rule); *Hernandez v. Mead Foods, Inc.,* 104 N.M. 67, 70–72, 716 P.2d 645, 648–50 (Ct.App.1986) (discussing the rule). This rule has not changed.

{19} However, in 1990 the law concerning who can select the health care provider and whether a particular health care provider may testify in a case changed significantly. Before 1990, the employer had the power to select the health care provider. In order to change providers, the worker was required to prove that the care provided by employer was inadequate. *See, e g., Bowles v. Los Lunas Schools,* 109 N.M. 100, 104–08, 781 P.2d 1178, 1182–86 (Ct.App.1989). There were, however, no restrictions on how many health care providers could testify in compensation proceedings before the Administration.

{20} The 1990 revisions to the WCA and the ODDL effectively abolished this system. Under the current version of the Act and the ODDL, the employer and the worker each have an opportunity to select the health care provider. NMSA 1978, §§ 52–1–49 (1990); 52–3–39 (1990); *Vargas v. City of Albuquerque,* 116 N.M. 664, 667, 866 P.2d 392, 395 (Ct.App.1993). However, the only health care providers who are allowed to testify at the compensation hearing are the treating physician (or other provider) and a properly appointed provider who performed an Independent Medical Examination (IME). NMSA 1978, §§ 52–1–51(C) (1990), 52–3–39(C) (1990); *Jurado v. Levi Strauss & Co.,* 120 N.M. 801, 804–06, 907 P.2d 205, 208–10 (Ct.App.1995). In this case, Worker agreed to be examined by three providers selected by Respondents to perform an IME and the admissibility of that testimony is not an issue in this appeal.

{21} Respondents have argued that there is no reason to apply a different standard of admissibility in proceedings before the Administration. We note, however, that the WCA and the ODDL incorporate standards that are quite different from those employed in tort cases. This is particularly true with respect to causation. The worker making a claim under the ODDL is not required to show that the working conditions were the only factor or even a major or predominant factor in producing the disease. *See Buchanan v. Kerr–McGee Corp.,* 121 N.M. 12, 19, 908 P.2d 242, 249 (Ct.App.1995) (holding that worker exposed to radiation as an underground uranium miner who later contracted cancer was entitled to recover under the ODDL even though his risk of contracting lung cancer was heightened by the fact that he smoked). Instead, the worker is only required to show, as a matter of medical probability, that "there is a recognizable, non-negligible link between Worker's

exposure ... and [the] risk of contracting [the disease]." *Id.*

{22} Similarly with respect to harm, as Worker points out (B.I.C.9–11), a worker is considered totally disabled under the ODDL if the worker cannot return to the same occupation by reason of an occupational disease. Section 52–3–4(D)(1) (1989); *Bryant v. Lear Siegler Mgmt. Servs. Corp.,* 115 N.M. 502, 505, 853 P.2d 753, 756 (Ct.App. 1993). The requirements for liability under the WCA and ODDL have always differed from standard tort liability, so it is not unreasonable that the *Alberico/Daubert* test need not be employed in such cases.

{23} Our holding today does not impair the ability of employers and insurers to challenge physicians or other health care providers who may be less than scientific in their approach. As we pointed out above, in ODDL cases, the only medical experts who can testify are the worker's treating health care provider and an authorized IME. Section 52–3–32 and Section 52–3–39. Even if Respondents cannot persuade a WCJ to appoint an IME, Respondents have a significant amount of control over the designation of an individual as a treating physician. Section 52–1–49, Section 52–3–15. In this case, Worker chose Dr. Ross as her treating physician. Thus, after sixty days, Respondents could have changed Worker's health care provider to another doctor. Section 52–1–49, Section 52–3–15(D); *City of Albuquerque v. Sanchez,* 113 N.M. 721, 726, 832 P.2d 412, 417 (Ct.App.1992). Respondents chose not to make any such change. Exclusion of Dr. Ross' testimony under the *Alberico/Daubert* standard is not an option available to Respondents.

## CONCLUSION

{24} In summary, we hold that the *Alberico/Daubert* standard for the admissibility of expert testimony does not apply to proceedings under the Workers' Compensation Act or the Occupational Disease and Disablement Act. Thus, we need not address the other arguments of the parties. Accordingly, the order granting summary judgment and the order excluding the testimony of Dr. Ross are reversed and this matter is remanded to the Administration for further proceedings.

If Worker succeeds in recovering compensation, the WCJ shall include in any award of attorney fees compensation for the services of Worker's attorney on appeal.

{25} **IT IS SO ORDERED.**

{26} On Rehearing. Respondents' motion for rehearing makes two arguments. First, Respondents contend that our opinion incorrectly notes that Dr. Ross was the authorized health care provider. Respondents argue that under Section 52–4–1(O) out-of-state providers must be approved by the Workers' Compensation Director and that Dr. Ross has not been so approved. Respondents did not raise this issue below and therefore cannot raise it now on appeal. *Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496–97, 745 P.2d 717, 721–22 (Ct.App.1987).

{27} Second, Respondents contend that *Madrid v. Univ. of California,* 105 N.M. 715, 737 P.2d 74 (1987), resolves this case. In *Madrid,* our Supreme Court discussed the application of Rule 11–702 to causation testimony in compensation cases. At that time, compensation cases were tried in the district court and thus the Rules of Evidence for District Court applied without question. *Madrid* held that Section 52–1–28(B), which requires expert medical testimony, did not require that the expert in question be a physician. Thus, testimony by a treating clinical psychologist was sufficient to establish the causal connection between the claimant's work and her mental disability. However, *Madrid* does not address the *Alberico/Daubert* standard because that standard was not adopted in New Mexico until 1993, five years after *Madrid* was decided.

{28} For the reasons given above, the motion for rehearing is denied.

{29} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and CELIA FOY CASTILLO, Judges.