735 A.2d 1142

MARY KIBBLE, PETITIONER–APPELLANT, v.
WEEKS DREDGING & CONSTRUCTION
CO., RESPONDENT–RESPONDENT.

Argued March 2, 1999—Decided August 9, 1999.

180

*Patrick R. Caulfield,* argued the cause for appellant (*Levinson, Axelrod, Wheaton, Grayzel, Caulfield, Marcolus & Dunn,* attorneys).

*Francis T. Giuliano,* argued the cause for respondent (*Mr. Giuliano,* attorney; *Mr. Giuliano* and *David P. Kendall,* on the briefs).

*Craig H. Livingston,* submitted a brief on behalf of *amici curiae* New Jersey State American Federation of Labor and Congress of Industrial Organizations, New Jersey State Industrial Union Council, AFL–CIO, District 15 of the International Association of Machinists and Aerospace Workers, AFL–CIO and New Jersey Advisory Council on Safety and Health (*Ball & Livingston,* attorneys; *Mr. Livingston* and *Sherry G. Chachkin,* of counsel and on the briefs).

The opinion of the Court was delivered by

STEIN, J.

The critical issue in this appeal is whether a worker who settles his or her workers' compensation claim pursuant to *N.J.S.A.* 34:15–20 (Section 20) simultaneously can waive the future right of his or her spouse to assert a statutory claim for dependency benefits in the event of the worker's death. See *N.J.S.A.* 34:15–13. The Division of Workers' Compensation held that the worker's waiver of his spouse's dependency claim was binding on his widow. In an unpublished opinion the Appellate Division affirmed. We granted certification, 157 *N.J.* 541, 724 *A.*2d 801 (1998), and now reverse.

I

Carl Kibble was employed by respondent Weeks Dredging & Construction Co. from September 1980 until March 1984 as a welder/torch cutter. He had worked for other employers in the same capacity from the mid–1950s until 1980. During the course of that employment, Kibble was exposed to chromium, nickel, and other welding fumes.

A chest x-ray taken in 1977 revealed that he was suffering from pneumonoconiosis, a lung condition caused by the retention of dust in the lungs. In 1984, he sought treatment from his family physician, Dr. James R. Robin, for a chronic cough. Dr. Robin diagnosed Kibble with pulmonary fibrosis and concluded that that condition had been caused by Kibble's exposure to welding fumes. Dr. Robin also concluded that Kibble was "totally disabled with welder[']s lung," and advised him that he "absolutely should not work in this field again."

In June 1984, Kibble filed a workers' compensation claim against Weeks and seven other prior employers, seeking benefits for "permanent disability to lungs, internal and nervous system." A doctor who evaluated Kibble in connection with his claim concurred with Dr. Robin's conclusion that Kibble was totally disabled and found that because of his exposure to welding fumes he was at an "increased risk" of developing lung cancer in the

future. In January 1989, Kibble settled his compensation claim pursuant to Section 20 for a lump-sum payment of $36,000.[1] As part of the prevailing practice in the Division of Workers' Compensation (Division), the settlement was placed on the official record of the proceedings and approved by the judge of compensation. Regrettably, the transcript of those proceedings was lost or destroyed. The pre-printed settlement form that apparently was used routinely by the Workers' Compensation Court in processing Section 20 settlements stated that the settlement "has the effect of a dismissal with prejudice, *being final as to all right[s] and benefits of the petitioner and the petitioner's dependents* and is a complete and absolute surrender and release of all their rights *arising out of this/these claim(s)*." (Emphasis supplied).

Kibble and his wife Mary (petitioner) also had filed suit in federal court alleging claims based on products liability and failure to provide a safe workplace. That case settled prior to the Section 20 settlement. The release in the third-party action explicitly waived any and all claims for injury "including pulmonary fibrosis or any other illness or injury yet undiagnosed, past, present or future ... and all future claims for wrongful death ... caused by any occupational disease, diagnosed, or yet undiagnosed, past, present, or future."

In November 1993, almost four years after the Section 20 settlement, Kibble was diagnosed with lung cancer. He died on March 5, 1994. Kibble's death certificate lists his cause of death as "lung cancer [and] pneumoconiosis." In April 1994, petitioner filed a dependency claim, pursuant to *N.J.S.A.* 34:15–13, alleging

---

[1] If Kibble was totally and permanently disabled from his occupational exposure to chromium and nickel fumes, he would have been entitled to 450 weeks of compensation at his weekly rate of $255, totaling $114,750. Based on the provisions of *N.J.S.A.* 34:15–40, Kibble's settlement of his third-party federal court action reduced Weeks' and other respondents' potential obligations of $114,750 to about $38,250. The payment of $36,000 in the Section 20 settlement apparently was a compromise of the potential $38,250 that would have been payable if Kibble's workers' compensation claims had been successfully litigated.

that her husband's lung cancer and death were caused by his occupational exposure to welding fumes. The Division dismissed petitioner's claim, finding that "the intention of the parties [in the Section 20 settlement] was to make a total settlement of all claims related to lung problems, including dependency claims." The Appellate Division affirmed that judgment, finding ample support in the record to sustain the Division's conclusion.

Petitioner argues that Section 20 settlements do not extinguish future causes of action, such as those for dependency benefits and claims for diseases not manifest at the time of settlement. She maintains that her husband's original claims related solely to pulmonary fibrosis, and that the lung cancer that caused his death did not manifest until four years after the Section 20 settlement. Thus, she argues that because her dependency claim is based on the cancer that had not manifested itself at the time of the Section 20 settlement, it is not barred. She also contends that even if dependency claims can be waived in a Section 20 settlement, the evidence in this case failed to establish that the parties intended to waive dependency benefits.

Respondent counters that Kibble's original claim was for "permanent disability to the lungs, internal and nervous systems" and was not restricted to pulmonary fibrosis. It maintains that the scope of a Section 20 settlement must be derived from the intent of the parties.

The New Jersey State AFL–CIO, New Jersey State Industrial Union Council, AFL–CIO, District 15 of The International Association of Machinists and Aerospace Workers, AFL–CIO, and New Jersey Advisory Council on Safety and Health, as *amici curiae*, argue in support of the petitioner's position that Section 20 settlements should not extinguish future dependency claims unless "such claims arise from the same condition that was the basis for the settlement of the compensation claim." The *amici* argue that because the cancer was not manifest when the Section 20 settlement was approved by the judge, the dependency claims based on cancer were not waived.

After argument of this appeal, the Court requested and the parties submitted supplemental briefs on whether waivers of dependency claims in connection with Section 20 settlements were statutorily authorized and, if so, what proofs should be required to establish the validity of such waivers.

## II

### A

Separate from and in addition to the right of workers to receive compensation benefits under the Workers' Compensation Act (Act or WCA), *N.J.S.A.* 34:15–1 to –128, in the event of permanent partial or total disability caused by a compensable accident or occupational disease, the Act provides benefits to dependents of deceased workers. Accordingly, if an accident or occupational disease that arises out of and in the course of employment causes or contributes to the cause of the employee's death, the Act requires payment of benefits to the workers' dependents. *N.J.S.A.* 34:15–13. Our cases emphasize that "[t]he rights of dependents to compensation are independent and separate rights flowing to them from the [WCA] itself. They are not rights to which [dependents] succeed as the representatives of the [deceased employee]." *Eckert v. New Jersey State Highway Dep't,* 1 *N.J.* 474, 480, 64 *A.2d* 221 (1949); *accord McAllister v. Board of Educ.,* 42 *N.J.* 56, 59–60, 198 *A.2d* 765 (1964); *Luszcs v. Seaboard By–Products Co.,* 101 *N.J.L.* 170, 173, 127 *A.* 212 (E. & A.1925); *Adams v. Woodbridge Sanitary Pottery Corp.,* 174 *N.J.Super.* 284, 287–88, 416 *A.2d* 422 (App.Div.1980); *Roberts v. All Am. Eng'g Co.,* 104 *N.J.Super.* 1, 7, 248 *A.2d* 280 (App.Div. 1968), *certif. denied,* 53 *N.J.* 351, 250 *A.2d* 753 (1969). Professor Larson succinctly describes the separate and independent status of dependency claims:

> The dependent's right to death benefits is an independent right derived from statute, not from the rights of the decedent. Accordingly, death benefits are not affected by compromises or releases executed by decedent, or by an adverse holding on decedent's claim, or by claimant's failure to claim within the statutory period.
>
> [2 Arthur Larson, *The Law of Workmen's Compensation* § 64.00 (1989).]

Only a small minority of states permits a settlement of a compensation claim by a worker during his or her lifetime to preclude a claim for future death benefits by that worker's dependents. In the vast majority of states, a dependent's right to seek worker's compensation death benefits is not affected by a lump-sum settlement agreement between an injured worker and that worker's employer. Deborah Tauber, *A Proposal to Resuscitate the Abrogated Rights of Dependents Under Section 20 of the New Jersey Workers' Compensation Act,* 20 *Rutgers L.J.* 513, 519 n.30 (1989). The majority rule is based on the "sound theory that the dependents' rights are not derived from the employee's rights, but instead, are separate and independent rights of the dependent." *Ibid.; accord Lewis v. Connolly Contracting Co.,* 196 *Minn.* 108, 264 *N.W.* 581, 586 (1936); *Industrial Comm'n v. Davis,* 126 *Ohio St.* 593, 186 *N.E.* 505, 505 (1933); *Hotel Claridge Co. v. Blank,* 169 *Tenn.* 575, 89 *S.W.*2d 758, 760 (1936); *Laird v. Vermont Highway Dep't,* 112 *Vt.* 67, 20 *A.*2d 555, 561 (1941). In those jurisdictions adopting the majority view, "[a] unilateral settlement or release by a worker of his or her own claims does not bar the surviving dependent's claim *even if the release signed by the worker explicitly purports to release the dependent's claim." Buchanan v. Kerr-McGee Corp.,* 121 *N.M.* 12, 908 *P.*2d 242, 245 (Ct.App.) (emphasis supplied), *cert. denied,* 120 *N.M.* 715, 905 *P.*2d 1119 (1995).

The New Mexico Supreme Court in *Buchanan,* explained the majority rule:

> The WCJ's decision presupposes that Worker's valid release is also effective to release Claimant's cause of action as a surviving dependent under the Occupational Disease Law. We disagree with this premise and the conclusion that follows from it. We hold that Claimant, as Worker's widow and dependent, has independent statutory rights to death benefits which arise upon Worker's death, and Claimant is not bound by the Release. *The claim of a dependent arising from the death of a worker is a new and separate claim and is not derivative of the worker's claim.* A unilateral settlement or release by a worker of his or her own claims does not bar the surviving dependent's claim even if the release signed by the worker explicitly

purports to release the dependent's claim, as was the case here. Our holding is in accord with the great weight of authority from other jurisdictions.

[*Id.* at 245 (emphasis supplied) (citations omitted).]

Professor Larson observes that a

striking consequence of the independent status of dependency rights is the rule, accepted by the majority of jurisdictions, that an adverse decision on the merits of a claim by the employee while he was alive does not bar a dependency claim under . the doctrine of res judicata, since the parties and rights involved are different, and since the dependent is not in privity with the injured employee as to the rights asserted by him.

[*Larson, supra,* § 64.14.]

Prior to 1980, there was no provision in the WCA, that permitted a worker to settle a compensation claim with his or her employer. However, that did not prevent parties from entering into "surreptitiously negotiated" settlements whereby the worker would agree to dismiss his or her claim voluntarily and with prejudice in exchange for a subsequent payment from the employer. See Tauber, *supra,* 20 *Rutgers L.J.* at 515.

That informal, out-of-court settlement procedure was found to be "contrary to public policy" by the Appellate Division in *Brown v. General Aniline & Film Corp.,* 127 *N.J.Super.* 93, 95, 316 *A.*2d 478, *aff'd o.b.,* 65 *N.J.* 555, 325 *A.*2d 689 (1974). In *Brown,* the injured worker testified before a judge of compensation that "he could not prove a compensable accident, and requested a dismissal of his petitions with prejudice against ever reopening his claims." *Id.* at 94, 316 *A.*2d 478. After the judge dismissed the worker's claims, the employer paid the worker $20,000. Following the worker's death, his widow filed dependency petitions, which were dismissed by the judge of compensation on the theory that the widow was "collaterally estopped from relitigating decedent's claim which had been dismissed with prejudice because a compensable claim had not been proven." *Id.* at 95, 316 *A.*2d 478. The Appellate Division reversed, holding that the WCA precluded the out-of-court settlement. Relying on Larson, *supra,* the court held that because dependency benefits are "separate and distinct" from the benefits due to an injured worker, "nothing that the decedent does, or attempts to do during his lifetime, can deprive dependents of their statutory benefits." *Id.* at 96, 316 *A.*2d 478.

In 1980, as part of extensive revisions to the WCA, the Legislature amended Section 20 to include a provision allowing lump-sum settlements between employers and employees. *L.* 1979, *c.* 283, § 8. That amendment apparently was enacted as a partial response to the Appellate Division's holding in *Brown, supra:*

> [Section 20] would benefit employers by . . . clarifying the effect of the decision in *Brown v. General Aniline* by permitting compensation judges to enter an award approving settlement in matters where causal relationship, jurisdiction, dependency or liability are in issue, resulting in the payment of a lump sum having the effect of a dismissal of the petition and a complete surrender of any future right to compensation or other benefits arising out of that claim.
>
> [Senate Labor, Industry & Professions Committee, *Joint Statement to Senate Committee Substitute for S. Bill 802 and Assembly Committee Substitute for A. Bill 840,* Nov. 13, 1979, at 2.]

In relevant part the amended Section 20 reads as follows:

> [A] judge of compensation may with the consent of the parties, after considering the testimony of the petitioner and other witnesses, together with any stipulation of the parties, and after such judge of compensation has determined that such settlement is fair and just under all the circumstances, enter "an order approving settlement." Such settlement, when so approved, notwithstanding any other provisions of this chapter, shall have the force and effect of a dismissal of the claim petition and shall be final and conclusive upon the employee and the employee's dependents, and shall be a complete surrender of any right to compensation or other benefits arising out of such claim under the statute.
>
> · [*N.J.S.A.* 34:15–20.]

■ For a Section 20 lump-sum settlement to be effective, the only statutory requirements are that the settlement be approved by the judge of compensation as "fair and just under all the circumstances," and that the settling petitioner be represented by counsel. *Ibid.* The applicable regulations require that the terms of the settlement be entered on a prescribed form, that *the employee,* employer and compensation judge sign the form, and that the employee "be fully advised of all rights." *See N.J.A.C.* 12:235–6.14. The regulations impose no other procedural requirements.

Since the adoption of the 1980 amendments there has been virtually no New Jersey case law considering the preclusive effect of Section 20 settlements on subsequently-filed dependency claims. That entire body of law consists of one unpublished Appellate

Division opinion and a written opinion of the Division of Workers' Compensation.

## B

### (1)

In *Alfone v. Sarno*, 87 *N.J.* 99, 432 *A.2d* 857 (1981), this Court was presented with an issue analogous to the primary issue in this appeal: whether a judgment in favor of a plaintiff in a personal injury suit precluded a subsequent action for wrongful death on behalf of that plaintiff's heirs. Noting that wrongful death actions create in a decedent's beneficiaries rights independent of and distinct from those involved in the underlying personal injury claim, we held that the wrongful death action could be maintained provided there was no duplication of damages. *Id.* at 114–23, 432 *A.2d* 857. We recognized that that holding "may prevent insurance carriers from obtaining complete releases from all possible wrongful death claims, *except perhaps by the inclusion in any such agreement of all persons who subsequently are determined to be wrongful death beneficiaries.*" *Id.* at 123, 432 *A.2d* 857 (emphasis supplied).[2]

The analogy to *Alfone* is germane to our disposition of this appeal. Both a wrongful death claim sounding in negligence, *N.J.S.A.* 2A:31-1 to –6, and a workers' compensation dependency claim, *N.J.S.A.* 34:15-13, are statutory causes of action with the same purpose: to compensate surviving dependents for the pecuniary losses resulting from death. Further, both causes of action are independent and distinct from the underlying claim of the injured party. *See Alfone, supra,* 87 *N.J.* at 107, 432 *A.2d* 857 ("New Jersey's wrongful death statute created a new cause of

---

[2] Subsequent to our decision in *Alfone*, the Appellate Division held that a release signed only by the plaintiff in connection with the settlement of a medical malpractice claim barred a later wrongful death action by the plaintiff's heirs. *Garde v. Wasson*, 251 *N.J.Super.* 608, 598 *A.2d* 1253 (1991), *certif. denied*, 127 *N.J.* 560, 606 *A.2d* 371 (1992). We disapprove of the decision in *Garde* to the extent that it is inconsistent with our holding in *Alfone*.

action 'beyond that which the deceased would have had if he had survived, and based on a different principle—a new right of action.' ") (quoting *Cooper v. Shore Electric Co.*, 63 *N.J.L.* 558, 563, 44 *A.* 633 (E. & A. 1899)); *Eckert, supra*, 1 *N.J.* at 480, 64 *A.2d* 221 (holding that rights of dependents to compensation are independent and separate rights that are derived from WCA).

### (2)

A loss of consortium, or *per quod*, claim is intended to compensate a person for the loss of a spouse's "society, companionship and services due to the fault of another." *Wolfe v. State Farm Ins. Co.*, 224 *N.J.Super.* 348, 350, 540 *A.2d* 871 (App.Div.), *certif. denied*, 111 *N.J.* 654, 546 *A.2d* 562 (1988). Although a *per quod* claim is derivative of the injured spouse's personal injury cause of action, *Tichenor v. Santillo*, 218 *N.J.Super.* 165, 173, 527 *A.2d* 78 (App.Div.1987), "it is also independent, as the damages which may be awarded to the spouse pursuant to the *per quod* claim are clearly different from the damages which may be awarded to the spouse suffering the direct injury," *Hauck v. Danclar*, 262 *N.J.Super.* 225, 227, 620 *A.2d* 479 (Law Div.1993).

A spouse's cause of action for loss of consortium is not compromised by settlement of the underlying personal injury claim. *Neely v. Kossove*, 198 *N.J.Super.* 503, 507, 487 *A.2d* 788 (Law Div.1984). The court in *Neely* explained the rationale for its holding:

> Logic dictates that the wife's action [for loss of consortium] is vested in her and may not be dismissed unless authorized by her. The right . . . can only be released by the wife who owns it. Were it otherwise, a husband who refuses to litigate for whatever reason could effectively eliminate a claim that is not possessed by him.
>
> [*Ibid.*]

That holding appears to be consistent with the rule in the majority of jurisdictions. *See, e.g., Gillespie v. Papale*, 541 *F.Supp.* 1042 (D.Mass.1982) (applying Massachusetts law); *Nealy v. Fluor Drilling Servs., Inc.*, 524 *F.Supp.* 789 (W.D.La.1981), *aff'd, Stretton v. Penrod Drilling Co.*, 701 *F.2d* 441 (5th Cir.1983); *Jones v. Elliott*, 551 *A.2d* 62 (Del.1988); *Huber v. Hovey*, 501 *N.W.2d* 53 (Iowa); *Bowen v. Kil–Kare, Inc.*, 63 *Ohio St.*3d 84, 585 *N.E.2d* 384

(1992); *Buttermore v. Aliquippa Hosp.*, 522 *Pa.* 325, 561 *A.*2d 733 (1989); *Whittlesey v. Miller,* 572 *S.W.*2d 665 (Tex.1978).

■ That a spouse's *per quod* claim survives the release of his or her spouse's personal injury claim supports the view that a spouse must participate in and consent to a Section 20 settlement proceeding purporting to waive future workers' compensation dependency benefits. Both a *per quod* claim and a claim for dependency benefits belong not to the injured party but to that party's spouse. Accordingly, in both instances, the spouse alone has the authority to compromise the claim.

(3)

■ An analogy also may be drawn to cases involving court-ordered child-support payments. Similar to workers' compensation dependency benefits, child support is designed to guarantee that the financial needs of unemancipated children are fulfilled following a divorce. *Pascale v. Pascale,* 140 *N.J.* 583, 590, 660 *A.*2d 485 (1995) ("Child support after divorce is necessary to ensure that a child's basic needs are provided by his parents, who might otherwise neglect their responsibilities to maintain the child.").

■ That the right to child support belongs to the child and not to the custodial parent is a fundamental principle of family law. *Id.* at 591, 660 *A.*2d 485; *Martinetti v. Hickman,* 261 *N.J.Super.* 508, 512, 619 *A.*2d 599 (App.Div.1993); *ESB, Inc. v. Fischer,* 185 *N.J.Super.* 373, 378, 448 *A.*2d 1030 (Ch.Div.1982). Accordingly, the right to child support "cannot be waived by the custodial parent." *Pascale, supra,* 140 *N.J.* at 591, 660 *A.*2d 485 (quoting *Martinetti, supra,* 261 *N.J.Super.* at 512, 619 *A.*2d 599); *see also ESB, Inc., supra,* 185 *N.J.Super.* at 378, 448 *A.*2d 1030 (noting that child's right to support "does not belong to the husband or wife to bargain with"). Our courts consistently have held that an agreement between parents purporting to waive child support does not affect the child's right to those benefits. See *Kopak v. Polzer,* 4 *N.J.* 327, 332–33, 72 *A.*2d 869 (1950) (holding that

mother's agreement to release father from child-support obligations did not discharge father's statutory obligation to support child); *Martinetti, supra,* 261 *N.J.Super.* at 512, 619 *A.2d* 599 (holding that consent order, whereby parents agreed that support would discontinue after two years, was not binding on child); *Ryan v. Ryan,* 246 *N.J.Super.* 376, 383, 587 *A.2d* 682 (Ch.Div. 1990) ("Agreements by parents [concerning child support] have no binding effect as to the welfare of the children"). The refusal by our courts to enforce releases of child-support obligations executed by a child's parents is consistent with the principle that an injured worker should not be permitted to waive future dependency benefits without the informed consent of that worker's dependents.

## C

In the event the Court determines that dependency benefits may be waived in Section 20 settlements but that the Division's longstanding procedures for effecting such settlements require modification, a related issue is whether petitioner would benefit from that holding.

"[T]he general rule applied in civil cases [is] that a new ruling shall apply to all matters that have not reached final judgment." *Coons v. American Honda Motor Co.,* 94 *N.J.* 307, 318–19, 463 *A.2d* 921 (1983) (*Coons I* ) (citing *Fox v. Snow,* 6 *N.J.* 12, 14, 76 *A.2d* 877 (1950)), *reh'g granted,* 96 *N.J.* 419, 476 *A.2d* 763 (1984) (*Coons II* ), *cert. denied,* 469 *U.S.* 1123, 105 *S.Ct.* 808, 83 *L.Ed.*2d 800 (1985). Further, in the interest of justice and fundamental fairness this Court repeatedly has rewarded litigants who challenge existing law by applying a new rule of law to those successful litigants, despite otherwise applying its decision only prospectively. *Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 449, 625 *A.2d* 1110 (1993); *Devins v. Borough of Bogota,* 124 *N.J.* 570, 580, 592 *A.2d* 199 (1991); *Spiewak v. Bd. of Educ.,* 90 *N.J.* 63, 83, 447 *A.2d* 140 (1982); *see also Coons II, supra,* 96 *N.J.* at 436, 476 *A.2d* 763 (Garibaldi, J., dissenting) ("It has long been the

position of this Court that 'fundamental fairness' compels that 'champions of the cause' should be rewarded for their effort and expense in challenging existing law."). That "limited prospective approach" is motivated by the related policies of providing an incentive to litigants to challenge existing law and of rewarding successful litigants for their efforts and expenses. *Fischer v. Canario*, 143 *N.J.* 235, 246, 670 *A.*2d 516 (1996); *Ramirez v. Amsted Indus., Inc.*, 86 *N.J.* 332, 357, 431 *A.*2d 811 (1981); *see also Darrow v. Hanover Township*, 58 *N.J.* 410, 420, 278 *A.*2d 200 (1971) ("[P]urely prospective rulings do not provide any inducement for litigants to challenge common law doctrines.").

The Supreme Court of California, in a case involving facts similar to these, invalidated a standard form signed by an employee settling a workers' compensation claim that purported to waive dependency benefits. That court, however, was firmly of the view that its holding should be applied for the benefit of the widow that challenged the waiver. In *Sumner v. Workers' Compensation Appeals Bd.*, 33 *Cal.*3d 965, 191 *Cal.Rptr.* 811, 663 *P.*2d 534 (1983), the employee signed a standard release form that waived "all claims and causes of action, whether now known or ascertained, or which may hereafter arise or develop as a result of said injury, including any and all liability . . . to the dependents, heirs, executors, representatives, administrators or assigns of said employee." *Id.* 191 *Cal.Rptr.* 811, 663 *P.*2d at 537. Following the employee's death from a work-related condition, his wife filed a claim for death benefits. The workers' compensation judge dismissed the claim based on the language in the release signed by the employee.

Although the Supreme Court of California agreed that an employee may, as part of a settlement of a workers' compensation claim, compromise his dependents' right to death benefits, the court reinstated the dependency claim. Observing that the release form failed to refer expressly to death benefits, the court found that "a layman executing that form might be unaware of the fact that he was releasing any claim of his spouse or children to

such benefits." *Id.* 191 *Cal.Rptr.* 811, 663 *P.2d* at 539. The court noted that in an earlier decision it had instructed the Workers' Compensation Appeals Board (Board) to revise its settlement form and procedure to better protect dependents against inadvertent or unwise releases of dependency claims, but that the Board had failed to comply. *Id.* 191 *Cal.Rptr.* 811, 663 *P.2d* at 535. Accordingly, the court declared that the standard settlement form would no longer be accepted, and directed the Board to revise the form to include "clear and non-technical language" indicating that the waiver includes a surrender of the employee's dependents' right to death benefits. The court declined to apply its holding retroactively, recognizing the potential burden on the workers' compensation system. However, the court gave the benefit of its holding to the petitioner "in recognition of her service in bringing the matter to our attention." *Id.* 191 *Cal.Rptr.* 811, 663 *P.2d* at 540.

## III

We are persuaded that the 1980 amendment to Section 20 was intended to modify *Brown v. General Aniline, supra,* 127 *N.J.Super.* 93, 316 *A.2d* 478, to permit employers to enter into settlements pursuant to Section 20 that would result in a compromise of the employee's compensation claim and also constitute a waiver of the dependency claims of the employee's spouse and children. However, in our view the Legislature did not intend to diminish the separate and independent status of the dependency claim, *Eckert, supra,* 1 *N.J.* at 480, 64 *A.2d* 221, by allowing the employee to waive it unilaterally. Accordingly, we hold that in all future Section 20 settlements in which the parties contemplate waiver of dependency claims in the event the employee's death occurs as a result of the injuries or conditions encompassed by the employee's compensation claim, the Division must be satisfied that the spouse, other adult dependents, and any minor dependents (whose interests ordinarily will be represented by the employee's spouse) join in the waiver of future dependency claims. As a general rule, we anticipate that such waiver by the spouse (and

other dependents) will occur on the record of the Division's Section 20 settlement proceedings, and will be preceded by an adequate explanation by the Judge of Workers' Compensation of the preclusive effect that the Section 20 settlement will have on any potential dependency claims. The Division should adopt regulations that will specify the procedures to be followed in Section 20 settlements that involve waivers of dependency claims, and should make appropriate revisions to its pre-printed form to take into account the need for consent to such waivers by spouses and other adult dependents. In general, we leave to the Division the responsibility for adopting and implementing procedures consistent with our holding, but we require that in each such case the Division ensure that a spouse's or other dependent's waiver of dependency benefits is given knowingly, intelligently and voluntarily.

Under our precedents, and in the context of the Division's longstanding past practice, the principle that a spouse or other adult dependent must knowingly, intelligently and voluntarily waive dependency benefits shall have the effect of a new rule of law for purposes of retroactivity analysis. For a holding to constitute a new rule of law there must be a " 'sudden and generally unanticipated repudiation of a long-standing practice.' " *State v. Afanador*, 151 *N.J.* 41, 58, 697 *A*.2d 529 (1997) (quoting *State v. Cupe*, 289 *N.J.Super.* 1, 12, 672 *A*.2d 1233 (App.Div.), *certif. denied*, 144 *N.J.* 589, 677 *A*.2d 761 (1996)). Another formulation is that "there must be 'some appreciable past from which the [new] rule departs.' " *State v. Purnell*, 161 *N.J.* 44, 53, 735 *A*.2d 513 (1999) (quoting *Afanador, supra*, 151 *N.J.* at 58, 697 *A*.2d 529); *see also Stafford v. Stafford Township Zoning Bd. of Adjustment*, 154 *N.J.* 62, 74, 711 *A*.2d 282 (1998) (concluding that Court's holding requiring applicants for non-conforming use certification to comply with notice to adjoining landowner provisions of Municipal Land Use Law constituted new rule of law). We are satisfied that our holding constitutes a substantial and significant departure from the Division's past practice and appropriately

should be regarded as a new principle of law for retroactivity purposes.

Applying the standards we described in *State v. Knight*, 145 *N.J.* 233, 251, 678 *A.*2d 642 (1996), we will apply our holding only prospectively, except that petitioner, who successfully litigated the issue, shall receive the benefit of our holding. " 'Fundamental fairness' compels that 'champions of the cause' should be rewarded for their effort and expense in challenging existing law." *Coons II, supra*, 96 *N.J.* at 436, 476 *A.*2d 763 (Garibaldi, J., dissenting). Although no evidence in the record suggests that petitioner was fully informed of and consented to the waiver of her dependency benefits, on remand to the Division respondent may move for a hearing on that issue if it can demonstrate to the Division's satisfaction that there exists a genuine factual dispute on the question of petitioner's actual consent to the waiver.

Because of our holding, resolution of the issue that occupied the lower courts—whether Kibble intended to waive his wife's future dependency claim when he entered into his Section 20 settlement—is unnecessary to our disposition of this appeal. That issue was vigorously contested before us, respondent contending that no purpose would be served by its consent to the Section 20 settlement unless dependency claims were waived; and petitioner contending that that settlement was intended only to compromise Kibble's claims based on pneumonoconiosis and pulmonary fibrosis, and not intended to affect claims based on the lung cancer that Kibble contracted years later. Because the Division's record is no longer available, resolution of the issue is unusually difficult. We note, however, that in 1989, when the settlement was effected, petitioner was sixty-years old with a life expectancy exceeding twenty-two years, and that her annual dependency benefit would exceed $13,000. As a matter of simple economics, a lump-sum settlement of $36,000 that purports to waive annual dependency benefits of over $13,000 per year for the remainder of the life of the worker's wife, at a time when the worker allegedly was likely to develop cancer from his occupational pulmonary exposure, is

suspect. We note that Kibble could have insisted on an adjudication of his right to compensation benefits and, had he prevailed, no waiver of dependency benefits would have occurred. In any event, that economic evaluation underscores our conviction that in the future only a knowing, informed and voluntary waiver of dependency benefits by a spouse or other dependent will be valid.

Finally, we note that if respondent ultimately is required on remand to pay dependency benefits to petitioner, and if petitioner's right to sue for wrongful death benefits had not been released, then respondent could have been "subrogated to the rights of the widow ... to assert a claim against the third-party tortfeasor under the Death Act." *Roberts, supra,* 104 *N.J.Super.* at 8, 248 *A.*2d 280. However, petitioner released her right to sue for wrongful death as a condition of settlement of decedent's third-party action. Significantly, no provision of the Act conditions her right to seek dependency benefits on her preservation of her wrongful death claim for the employer's benefit. In *Roberts, supra,* the employee's net recovery from his third-party action exceeded the employer's liability under the Act for compensation and dependency benefits combined, and the employer contended that that recovery by the employee barred his widow's dependency claim. Rejecting that contention the Appellate Division observed that "[s]ince the widow and children had no legal rights in the fund created by the employee's third-party action, the employer had no right to be subrogated to any part of this fund by way of reimbursement therefrom for any dependency benefits made to the widow and children." *Id.* at 9, 248 *A.*2d 280. Similarly, the record before us does not indicate that any portion of the settlement of the third-party action was paid directly to petitioner to compensate her for her release of the right to institute a wrongful death claim. Accordingly, as in *Roberts,* allowing petitioner on this record to seek dependency benefits "does not effectuate 'a double recovery.'" *Ibid.* If the remand proceedings disclose otherwise, appropriate adjustments may be sought.

## IV

We reverse the judgment of the Appellate Division and remand the matter to the Division of Workers' Compensation for further proceedings consistent with this opinion.

COLEMAN, J., dissenting.

The Court's conclusion that a worker may not knowingly and intelligently waive future dependency claims, unless the worker's spouse or other beneficiary consents, is contrary to legislative intent and is inconsistent with the long-standing practice by the bar and bench in the Division. Hence, I dissent.

## I

Carl Kibble was employed by respondent Weeks Dredging & Construction Co. from September 1980 until March 1984 as a welder/torch cutter. He had worked for other employers in the same capacity from the mid–1950s until 1980. During the course of that employment, Kibble was exposed to chromium, nickel, and other welding fumes. In the early 1970s, Kibble began experiencing shortness of breath. A 1977 chest x-ray revealed a lung condition called pneumoconiosis. In 1980, Kibble consulted his family physician, Dr. James R. Robin, for a productive and more frequent cough. In March or April 1984, Dr. Robin concluded that Kibble was suffering from pulmonary fibrosis and restrictive lung disease that were causally related to welding fumes. He also concluded that Kibble was totally disabled from welders lung disease. Kibble stopped working on March 12, 1984.

Kibble filed workers' compensation claim petitions on June 8, 1984, against respondent Weeks and seven other prior employers. He sought workers' compensation benefits for "permanent disability to lungs, internal and nervous system." On July 1, 1985, Dr. Elaine Panitz, who specialized in occupational and environmental medicine, examined Kibble in connection with his workers' compensation claims. Dr. Panitz concluded that Kibble's pulmonary

function would continue to deteriorate even though he was no longer working as a welder. The exposure to chromium and nickel fumes increased Kibble's risk of getting lung cancer. Dr. Panitz also found Kibble to be totally and permanently disabled. On April 21, 1987, the doctor repeated her concern for the possible development of lung cancer.

Although we have not been informed of the details, Kibble also filed a products liability case in federal court against the manufacturers and distributors of welding rods used by him, and against maritime employers for failure to provide a safe workplace. The claims against the third parties related to his pulmonary conditions. He received an unknown amount believed to be in excess of $200,000 from those independent third parties in a settlement. After that settlement, the workers' compensation claims were settled pursuant to Section 20 for $36,000 on January 20, 1989. Respondent Weeks paid Kibble's counsel an additional $6,000 in counsel fees for services rendered in connection with the Section 20 settlement.

At the time of the Section 20 settlement, counsel for Kibble contemplated that Kibble was totally and permanently disabled and that he was entitled to a lifetime award of $229,265 ($255 a week for a projected life expectancy of 17.29 years) plus a counsel fee of $6,000. Counsel therefore sought $50,000 to settle pursuant to *N.J.S.A.* 34:15–20. The $50,000 demand was based not only on the assumption that Kibble was totally and permanently disabled, but also on the acknowledgment that Weeks and other respondents in the pending workers' compensation cases were entitled to reimbursement pursuant to *N.J.S.A.* 34:15–40 from the third-party settlement for two-thirds of their workers' compensation liability. The demand was calculated on the projected value of a lifetime award for total and permanent disability rather than the $114,750 judgment for 450 weeks that would have been awarded pursuant to *N.J.S.A.* 34:15–12b if the claims had been successfully litigated. The purpose was to recover approximately one-third of the $114,-

750 as reimbursement for counsel fees incurred in the third-party settlement plus $200 for "expenses of suit."

As part of the prevailing practice in the Division of Workers' Compensation (Division), the settlement pursuant to *N.J.S.A.* 34:15–20 was placed on the official record of the proceedings and approved by the Judge of Compensation. Regrettably, the transcript of those proceedings was lost or destroyed. As will be seen later, however, the record was reconstructed. Additionally, the written order approving the settlement and dismissal of all the workers' compensation claims states that the settlement was "a dismissal with prejudice, being final as to all right[s] and benefits of the petitioner and the petitioner's dependents and is a complete and absolute surrender and release of all their rights arising out of this [or] these claims." The order approving the settlement was signed by Kibble, counsel for the parties, and the judge.

Kibble was diagnosed with lung cancer on November 23, 1993. He died on March 5, 1994, from lung cancer and pneumoconiosis. A month later, his widow, Mary Kibble, filed the present compensation dependency claim against Weeks alleging that her husband's cancer and death were causally related to his occupational exposure at Weeks. The same law firm that represented Kibble in his third-party action and his workers' compensation cases also represents the widow. Respondent Weeks filed a motion on April 7, 1995, to dismiss the dependency claim because Kibble had waived her right to file such a claim at the time her husband settled his claim under *N.J.S.A.* 34:15–20.

In granting the motion to dismiss the workers' compensation dependency claim, the Judge of Compensation concluded that the cause of death was precisely what Dr. Panitz had opined in 1985 and in 1987, and that the parties were well aware of the potential cancer when the Section 20 settlement was effectuated. The judge concluded that the parties clearly intended to waive and to surrender any and all lifetime and dependency claims related to the pulmonary pathology, including the lung cancer. The Appellate Division affirmed in an unpublished opinion, finding a sub-

stantial basis in the record to support the Judge of Compensation's conclusion.

## II

The widow-petitioner argues that Section 20 settlements do not extinguish future causes of action, such as those for dependency benefits and claims for diseases not manifest at the time of settlement. She maintains that her husband's original claims related solely to pulmonary fibrosis, and that the lung cancer that caused his death did not manifest until four years after the Section 20 settlement. Thus, she argues that because her dependency claim is based on the cancer that had not manifested itself at the time of the Section 20 settlement, it is not barred. She also contends that even if dependency claims can be waived in a Section 20 settlement, the evidence in this case failed to establish that the parties intended to waive dependency benefits.

Respondent counters that Kibble's original claim was for "permanent disability to the lungs, internal and nervous systems" and not restricted to pulmonary fibrosis. It maintains that the scope of a Section 20 settlement must be derived from the intent of the parties.

The New Jersey State AFL–CIO, New Jersey Industrial Union Council, AFL–CIO, District 15 of The International Association of Machinists and Aerospace Workers, AFL–CIO, and New Jersey Advisory Council on Safety & Health, as *amici curiae*, argue in support of the petitioner's position that Section 20 settlements should not extinguish future dependency claims unless "such claims arise from the same condition that was the basis for the settlement of the compensation claim." The *amici* argue that because the cancer was not manifest when the Section 20 settlement was approved by the judge, the dependency claims based on cancer were not waived.

## -A-

Before deciding whether dependency claims may be covered in Section 20 settlements, an understanding of the meaning of depen-

dency claims is important. In addition to the benefits injured workers are entitled to receive under the Workers' Compensation Act, *N.J.S.A.* 34:15–1 to –128(WCA), dependents of deceased employees may receive death benefits. *N.J.S.A.* 34:15–13. The same controlling principles governing compensation for employees also apply to compensation for death. *Ibid.* Thus, if an accident or occupational disease arises out of and in the course of the employment, and if that accident or occupational disease materially accelerates or contributes to the cause of the death, death benefits may be paid to dependents. Importantly, "[t]he rights of dependents to compensation are independent and separate rights flowing to them from the [WCA] itself. They are not rights to which [dependents] succeed as the representatives of the [deceased employee]." *Eckert v. New Jersey State Highway Dep't,* 1 *N.J.* 474, 480, 64 *A.2d* 221 (1949); *McAllister v. Board of Educ., Town of Kearny,* 42 *N.J.* 56, 59–60, 198 *A.2d* 765 (1964); *Luszcs v. Seaboard By–Products Co.,* 101 *N.J.L.* 170, 173, 127 *A.* 212 (E. & A.1925); *see Adams v. Woodbridge Sanitary Pottery Corp.,* 174 *N.J.Super.* 284, 287–88, 416 *A.2d* 422 (App.Div.1980); *Roberts v. All Am. Eng'g Co.,* 104 *N.J.Super.* 1, 7, 248 *A.2d* 280 (App.Div. 1968), *certif. denied,* 53 *N.J.* 351, 250 *A.2d* 753 (1969); Lex K. Larson, 2 *The Law of Workmen's Compensation* § 64.00, at 11–195 (1993) (citing numerous authorities from other jurisdictions standing for the same principle). Those rights, however, do not vest until the death of the worker. *McAllister, supra,* 42 *N.J.* at 59–60, 198 *A.2d* 765; *Eckert, supra,* 1 *N.J.* at 480, 64 *A.2d* 221.

-B-

The critical issue in this appeal is whether *N.J.S.A.* 34:15–20 permits a worker unilaterally to waive future dependency claims. The analysis must begin with the historical antecedents to the present Section 20 settlements. Prior to 1980, workers' compensation lump-sum settlements were not statutorily recognized in New Jersey. Rather, the former *N.J.S.A.* 34:15–20 provided that in the case of a dispute over a claim for compensation among

employer and employee, or the dependents of an employee, either party could submit the claim to the Division for a determination. The pre–1980 statute did not preclude the parties from entering into privately brokered settlements, however, and such settlements were frequently negotiated "on the side." Deborah Tauber, Note, *A Proposal to Resuscitate the Abrogated Rights of Dependents Under Section 20 of the New Jersey Workers' Compensation Act*, 20 *Rutgers L.J.* 513, 515 (1989). *Brown v. General Aniline and Film Corp.*, 127 *N.J.Super.* 93, 96, 316 *A.*2d 478 (App.Div.), *aff'd*, 65 *N.J.* 555, 325 *A.*2d 689 (1974), struck a blow to privately-arranged out-of-court settlements between an employer and employee.

In *Brown,* the widow of a deceased employee appealed from an order of the Division dismissing her dependency claims on the basis of a prior settlement between the decedent (Brown) and his employer. *Id.* at 94, 316 *A.*2d 478. In 1969, after suffering a heart attack as a result of his employment, Brown filed several claims for compensation against his employer. *Ibid.* At a *pro forma* hearing before the Judge of Compensation, Brown testified that "on the advice of his attorney he ... could not prove a compensable accident, and requested a dismissal of his petitions with prejudice against ever reopening his claims." *Ibid.* The petition was dismissed solely on the basis of the decedent's statement. *Id.* at 94–95, 316 *A.*2d 478. On the same day, the claimant accepted a $20,000 lump-sum payment from the employer and signed a release stating that he could not prove a compensable claim and would not appeal the dismissal. *Id.* at 95, 316 *A.*2d 478.

After Brown's death in 1971, his widow and child filed dependency claims based on the same factual allegations that Brown had made in his petitions. *Ibid.* The dependents' claims were dismissed by the Judge of Compensation on the theory that Brown's dependents were collaterally estopped from relitigating the decedent's claim, which had been dismissed with prejudice pursuant to the settlement. *Ibid.* The dependents appealed.

The Appellate Division found the settlement invalid. The court noted that no testimony, factual or medical, was adduced at the decedent's hearing and that "[s]ince it was obviously not a hearing on the merits, it was contrary to public policy and was a clear violation of *N.J.S.A.* 34:15–22 which proscribes this type of settlement." *Ibid.*

The court further held that even if the settlement was binding, Brown's surviving spouse and child had dependency rights independent of the settlement between Brown and his employer. *Id.* at 96, 316 *A.*2d 478. Reciting the principle that dependents have "separate and distinct statutory causes of action" if able to prove their dependency, the court reasoned that "dependency claims must rise or fall on their own merits, and nothing that the decedent does, or attempts to do during his lifetime, can deprive dependents of their statutory benefits." *Ibid.* Consequently, any settlement by the deceased of his rights under the WCA could not bar the subsequent rights of his or her dependents. *Ibid.*

In 1980, the WCA was extensively revised and reformed. As part of the reform, the Legislature responded to *Brown* by enacting *N.J.S.A.* 34:15–20 allowing lump-sum settlements. Senate Labor, Industry and Professions Committee, *Joint Statement to Senate Committee Substitute for S. Bill 802 and Assembly Committee Substitute for A. Bill 840,* Nov. 13, 1979 at 2, (hereinafter Joint Statement).

The Joint Statement provides:

[Section 20] would benefit employers by . . . clarifying the effect of the decision in *Brown v. General Aniline* by permitting compensation judges to enter an award [or order] approving settlement in matters where causal relationship, jurisdiction, dependency or liability are in issue, resulting in the payment of a lump sum having the effect of a dismissal of the petition and a complete surrender of any future right to compensation or other benefits arising out of that claim.

[*Joint Statement,* at 2.]

Section 20 reads in relevant part:

[A] judge of compensation may with the consent of the parties, after considering the testimony of the petitioner and other witnesses, together with any stipulation of the parties, and after such judge of compensation has determined that such settlement is fair and just under all the circumstances, enter "an order approving

settlement." Such settlement, when so approved, notwithstanding any other provisions of this chapter, shall have the force and effect of a dismissal of the claim petition and shall be final and conclusive upon the employee and the employee's dependents, and shall be a complete surrender of any right to compensation or other benefits arising out of such claim under the statute.

[*N.J.S.A.* 34:15–20.]

Under Section 20, lump-sum settlements are valid provided that (1) they are approved by a judge of compensation, (2) petitioner is represented by counsel, and (3) the settlement is fair and just. *N.J.S.A.* 34:15–20. As required by the statute, the attorney for Kibble, the attorney for respondent, and Kibble all signed the order approving settlement that was found to be fair and just by the judge. Consequently, the order approving the Section 20 settlement in the present case facially satisfied all of the statutory requirements. *Hetherington by Hetherington v. Briarwood Coachlight,* 253 *N.J.Super.* 484, 489, 602 *A.*2d 292 (App.Div.1992).

Although it is apparent that all of the statutory prerequisites were met to satisfy a Section 20 settlement, that is not dispositive of whether Kibble could legally waive the right of his widow to file the present dependency claim. The answer depends on whether that aspect of the *Brown* decision holding that "nothing that the decedent does, or attempts to do during his lifetime, can deprive dependents of their statutory benefits" remained the law after the 1980 amendment. *Brown, supra,* 127 *N.J.Super.* at 96, 316 *A.*2d 478. Contrary to the majority, I conclude that the Legislature intended that its 1980 amendment would permit a worker unilaterally to waive dependency benefits.

After the 1980 amendment to the WCA, it has been the administrative understanding of the workers' compensation bench and bar that workers can and do waive dependency benefits in Section 20 settlements. *Stinger v. Okonite Co.,* A–3702–93T2 (App.Div. 1995)[1] (affirming the Judge of Compensation's holding that be-

---

[1] Reference to the unpublished opinion is for the limited purpose of demonstrating the administrative practice rather than for any *stare decisis* effect. *R.* 1:36–3.

cause dependency claim had not vested during the worker's lifetime, it was subject to being cut off by Section 20 settlement). The Legislature's acquiescence in the administrative interpretation of Section 20 is evidence that such interpretation accords with legislative intent. *State v. Gonzalez,* 142 *N.J.* 618, 633, 667 *A.*2d 684 (1995); *Lemke v. Bailey,* 41 *N.J.* 295, 301, 196 *A.*2d 523 (1963). The amendment to Section 20 is best viewed as a legislative modification and ratification of the administrative practice described in *Brown.* This view is consistent with the California Supreme Court's interpretation of its workers' compensation statute to permit a worker to waive dependency benefits. *Sumner v. Workers' Compensation Appeal Bd.,* 33 *Cal.*3d 965, 191 *Cal.Rptr.* 811, 663 *P.*2d 534, 539 (1983).

I disagree with the majority that because a spouse's *per quod* claim survives the release of his or her spouse's personal injury claim, a worker should not be able to waive a spouse's dependency claim in a Section 20 settlement. *Ante* at 191, 735 *A.*2d at 1149–50. The analogy is faulty because the *per quod* claim is based on the common law whereas here the scope of Section 20 settlement is determined based on legislative intent. Similarly, the child support analogy is faulty because "it is well recognized that support orders are not, and by their very nature cannot be final." *Kopak v. Polzer,* 4 *N.J.* 327, 332, 72 *A.*2d 869 (1950). Child support obligations are vested at the time of the birth of the child and are subject to upward or downward modifications based on changed circumstances. *Lepis v. Lepis,* 83 *N.J.* 139, 150–51, 416 *A.*2d 45 (1980). In contrast, dependency benefits are not subject to any upward modification.

Furthermore, dependency benefits do not come into existence until the death of the employee. Because dependency benefits, like employee-workers benefits, are statutorily based, the Legislature can and did place conditions on the payments of death benefits. The most important condition is that the worker's death be caused by a compensable accident or occupational disease. *N.J.S.A.* 34:15–13h. Thus, the availability of dependency benefits

is "inextricably linked to, and wholly dependent upon, the existence of a compensable injury or illness suffered by the employee" and consequently, "in the absence of a work-related injury or illness, a surviving dependent of the employee has no claim whatsoever." *Duni v. United Technologies Corp./Pratt and Whitney Aircraft Div.*, 239 *Conn.* 19, 682 *A.*2d 99, 102 (1996).

At the time of the Section 20 settlement, Kibble released Weeks from any and all liability related to his "lungs, internal and nervous systems" with the judge's approval. With Kibble's consent, all of his claims were dismissed with prejudice. At the time of the consent dismissal with prejudice, Kibble's attorney was in possession of a medical report opining that Kibble was likely to develop cancer from his occupational pulmonary exposure. The dismissal with prejudice was based on the express intent of the parties rather than on any procedural inability of the Division to adjudicate the substantive merits of the claims asserted. *See Watkins v. Resorts Int'l Hotel & Casino*, 124 *N.J.* 398, 416, 591 *A.*2d 592 (1991).

After concluding that the parties intended to waive any future dependency claims at the time of the Section 20 settlement, the Judge of Compensation also relied on the doctrine of *res judicata* to support his conclusion. He stated: "The bottom line of my ruling is that I feel it's *res judicata.*" I agree that in the circumstances of this case, particularly the intention of the parties and the medical records and reports in the possession of counsel for the parties, the dismissal with prejudice "operates as an adjudication on the merits," *R.* 4:37–2(d), "as fully and completely as if the order had been entered after trial." *Velasquez v. Franz*, 123 *N.J.* 498, 507, 589 *A.*2d 143 (1991) (quoting *Gambocz v. Yelencsics*, 468 *F.*2d 837, 840 (3d Cir.1972)). Because Kibble intended to waive future dependency benefits, *infra* at 212, 735 *A.*2d at 1162, the dismissal with prejudice had the same legal effect as an adjudication on the merits that Kibble had not sustained any compensable condition related to his employment with Weeks and the prior employers. *See Cornblatt v. Barow*, 153

*N.J.* 218, 243, 708 *A.2d* 401 (1998). Based on the intent of the parties, the medical records, and the judge's approval, the dismissal permits invocation of the doctrines of collateral estoppel and *res judicata, City of Hackensack v. Winner,* 82 *N.J.* 1, 31–33, 410 *A.2d* 1146 (1980); *State v. Gonzalez,* 75 *N.J.* 181, 186, 380 *A.2d* 1128 (1977); *Taylor by Taylor v. Engelhard Indus.,* 230 *N.J.Super.* 245, 253, 553 *A.2d* 361 (App.Div.1989), to bar dependency claims that rely essentially on the same operative facts upon which Kibble's claims were based.

The express legislative purpose to "clarify *Brown,*" and Section 20's plain language that the settlement "shall be final and conclusive upon the employee and the employee's dependents," indicate that the Legislature intended the amendment to Section 20 to permit a worker to waive future dependency claims. Thus, "[l]ump-sum settlements have the effect of surrendering the rights of dependents and of completely overruling *Brown.*" Carl Valore, Jr., *Aspects of Representing the Petitioner on Workers' Compensation* in *Workers' Compensation, Practical Skills Series* 95–112 (New Jersey Institute for Continuing Legal Education 1995); *see also* Tauber, *supra,* at 515–16. The Appellate Division reached the same conclusion in the present case and the one other time it reviewed the issue.

The unpublished Appellate Division opinion in *Stinger* was relied on by the Judge of Compensation in dismissing petitioner's dependency claim. In *Stinger,* the Appellate Division dismissed a petitioner's claim that she had a vested right to death benefits and that any reduction thereof constituted an unconstitutional taking. Noting that "[p]etitioner's entitlement to dependency claims is entirely statutory," the court observed that petitioner "misperceives the nature of dependency benefits." *Id.* at 2–3. The court concluded that "[a]t the time [petitioner's husband] settled his claim pursuant to section 20, the Legislature specifically mandated that a section 20 settlement would constitute a settlement of all future claims arising therefrom." *Id.* at 3. The court thus held that the petitioner's potential dependency claim was not vested at

the time her husband settled his claim, was contingent on that claim, and was subject to being cut off by Section 20. *Ibid.*

In *Szikszai v. Simmons Precision,* 92 *N.J.A.R.*2d 145 (WCC), 1992 WL 373053, the Division also expressed the same view and rejected petitioner's claim that her right to dependency benefits is free-standing and not extinguished by a decedent's decision to accept a lump-sum payment and dismissal with prejudice of his claim. The court observed that the petitioner correctly noted that her cause of action did not arise until the death of the decedent. Nevertheless, the court explained that any such claim is derivative to the extent that the cause of the decedent's death must "arise out of and in the course of the worker's employment." *Ibid.* The court concluded:

> The decedent agreed that his claim for workers' compensation benefits for the condition from which he ultimately died would be dismissed with prejudice. A Judge of Compensation reviewed this settlement and agreed that it was fair and just under all circumstances. Therefore, the disease that caused decedent's death has been determined not to "arise out of and in the course of decedent's employment."
>
> [*Ibid.*]

The majority's conclusion that although the Legislature intended to permit workers to waive dependency benefits in Section 20 settlements, the spouse or adult dependent must nonetheless sign the release or show consent by other means as a pre-condition to waiver, is contrary to both law and logic. *Ante* at 194 – 95, 735 *A.*2d at 1151 – 52. The legislatively created right to waive dependency benefits established an absolute right for the worker intentionally to surrender dependency claims. *See County of Morris v. Fauver,* 153 *N.J.* 80, 104–05, 707 *A.*2d 958 (1998). Once the spouse's consent is required, the legislative intent to enable workers to waive dependency benefits becomes meaningless because the legal effect of that requirement is that only the spouse or adult dependent of a worker can waive dependency claims.

I agree with the approach adopted by the Appellate Division in its two unpublished opinions and the view expressed by the judges

in the Division. I would hold that a worker may unilaterally waive a surviving dependent's right to dependency benefits if the statutory conditions of Section 20 are satisfied. As noted previously, they were satisfied in the present case.

## III

The remaining issue is whether the scope of the Section 20 settlement in the present case was intended to include potential dependency claims. Although the transcript of the Section 20 settlement is not available, the Judge of Compensation reconstructed the record and found that the parties intended to waive dependency benefits. The Appellate Division concluded that that finding could reasonably have been reached based on sufficient credible evidence present in the record. *See Close v. Kordulak Bros.*, 44 *N.J.* 589, 599, 210 *A.*2d 753 (1965). I agree.

The Judge of Compensation reviewed the medical reports and concluded that the effect of the settlement was to acknowledge that Kibble was totally and permanently disabled due to his pulmonary disability caused by exposure to welding fumes for thirty years. In reconstructing the record, the Judge of Compensation observed that he was familiar with the procedure followed by the judge who presided over the Section 20 proceedings. Based on the reconstructed record, the judge concluded that the parties intended to include the high risk for cancer and potential death benefits claims in the Section 20 settlement. He found:

Well, taking into account the amounts of money paid, that we have a clear indication by the respondent's attorney that he was specifically contemplating death as one of the risks and the dependency benefits as one of the risks, Dr. Panitz, petitioner's expert, was monitoring in the future, specifically to be on the lookout for neoplasia, cancer, who was considering the nature, as I know, universal practice in Section 20 Settlements become available following the 1980 revision of the Statute to remind the petitioner that he was giving up rights not only on his own behalf, but for dependants. I think the intention of the parties was to make a total settlement of all claims related to lung problems, including dependency claims. I think that was their intent when they entered the Section 20 Settlement. I think it's almost incredible— well, I do think it's very very improbable that respondents in 1989 would have paid out this kind of money only to face the risk that in the future they'd be back answering a new claim by the decedent, by the

petitioner, by the employee. I don't think you can say well, the employee gave up all lifetime claims and the only thing that wasn't released was the dependency claim. I think petitioner can argue that it was not in contemplation that cancer was to be released, but to make that argument, they'd have to argue that if the day after the Section 20 Settlement was entered, then there was a diagnosis of cancer and the petitioner wanted treatment for it, that then the respondent would have to start paying for that treatment of the cancer during their lifetime. And if the disability was greater than at the time, if the ultimate permanent disability became greater, that the respondents would have to pay for that too. I don't see how you can—how it could be argued that the employee meant to give up any lifetime claims for cancer and any treatment for cancer, but did not mean to give up a dependency claim. That just doesn't make any sense at all. So you'd have to be arguing that cancer was not released. With Dr. Panitz pointing to the risk of that, the man did have a smoking history, so if the matter of any lung problems were tried, there'd be an issue of causation. Dr. Burke specifically says in his opinion that the extent of disability was regardless of cause, so the amount paid in settlement certainly reflects some discount for the issues of causation. I referred earlier to present values, of course under the *Owens* Case, the third-party settlement would compel any right, any obligation that the respondents had, so to that extent my comments on present value have to be put in that context. So the bottom line of my ruling is that I feel it's *res judicata*, the dependency claim is barred by the prior Section 20.

. . . .

There's no question about it, that at the time of the Section 20 Settlement the experts on both sides agreed that there was a condition present in the lungs which would fall within the very general category of pneumoconiosis, and to allow petitioner now to bring a dependency claim based on the fact that the cancer contributed to the death and the cancer hadn't been diagnosed at the time of the Section 20 Settlement, it would mean that the death occurred from two causes, pneumoconiosis and cancer. That the respondent had been released from the affects of the pneumoconiosis, petitioner would have to concede that. It shows the practical difficulty almost impossible of trying to say when somebody has a major pulmonary problem that the claim can be released and then the pulmonary problem can get worse and he can come back again and get additional compensation for that, especially after a Section 20 Settlement was done. Under Section 12 of the Act the respondent is entitled to credit for pre-existing disability, but how would you have calculated the value of pre-existing disability released by a Section 20 settlement? Mr. Nadeau talked about the chilling effect on settlements, but I think the position of the petitioner is much more conducive to chilling effects on settlements. I think if it had been clearly stated to the respondents at the time this Section 20 Settlement was put on the record, that despite the Section 20 Settlement, if the fear expressed by petitioner's expert, Dr. Panitz adheres and he develops cancer, the petitioner is going to be back seeking treatment for the cancer, seeking temporary disability benefits, seeking more permanent disability benefits, and the respondent will have a terrible time trying to prove what was pre-

existing disability. And then if the petitioner dies, then the widow will come in seeking dependency benefits. If the petitioner had said all that on the record at the time of the Section 20 Settlement, I can't imagine the respondents would have said okay, that's wonderful, we'll close the file for the current diagnosis and leave open the possibility of petitioner coming back tomorrow with a new diagnosis of cancer and seeking all those additional benefits for himself and his dependents. I just can't imagine that any respondent would have an intention to enter a settlement on that basis, and I can't imagine that a petitioner would fail to realize that at the time of entering the Section 20 settlement.

Significantly, although the same law firm, and generally the same attorney, represented Mr. and Mrs. Kibble in all the litigation discussed, no person from the firm has presented sworn testimony, an affidavit, or certification stating that Mr. Kibble did not waive any future dependency claims. As the Judge of Compensation observed, given that the amount of Section 20 settlement was an acknowledgment of total permanent disability from pulmonary pathology, if the respondent was not receiving a waiver of future dependency benefits, then a Section 20 settlement was of no meaningful benefit to the respondents. Stated in common sense terms, why would respondents pay $36,000 of a potential $38,250 exposure if they were not buying out of a potential dependency claim at a time when medical experts had already concluded Kibble was totally disabled from lung pathology that would likely cause lung cancer.

Consequently, I agree with the Appellate Division that the parties to the Section 20 settlement intended to waive and release all future dependency claims.

## IV

In the area of tort litigation, our decisional law with respect to wrongful death causes of action bears some similarity to dependency claims under the WCA. Under our wrongful death act, dependents of the decedent are generally entitled to any damages awarded. *N.J.S.A.* 2A:31–4. Yet, the injured party during his or her lifetime may extinguish a future wrongful death cause of action when settling a personal injury case. *Alfone v. Sarno*, 87 *N.J.* 99, 123, 432 *A.*2d 857 (1981). "The parties in the tort action

[are] free to expressly include a release of any potential wrongful death action" by including in any settlement agreement or general release a provision that covers all potential wrongful death beneficiaries. *Garde v. Wasson,* 251 *N.J.Super.* 608, 616, 598 *A.*2d 1253 (App.Div.1991), *certif. denied,* 127 *N.J.* 560, 606 *A.*2d 371 (1992).

Indeed, the general release executed as one of the documents involved in the settlement of the third-party case provides that Carl Kibble and his wife Mary Kibble released any and all claims and rights "resulting from anything which has happened to [Carl Kibble] ... for compensatory damages and/or punitive damages against [the specified defendants] ... for injuries sustained[,] including pulmonary fibrosis or any other illness or injury yet undiagnosed, past, present or future; ... and all future claims for wrongful death against [the specified defendants] caused by any occupational disease, diagnosed, or yet undiagnosed, past, present, or future." The release also acknowledged that it was binding on Kibble, his wife, and "[a]nyone who succeeds to my rights and responsibilities, such as my heirs or the executor of my estate." If minor children of Mr. Kibble survived him, they would have been bound by his waiver. However, the widow is the only named dependent in the petition.

Under the third-party settlement, Weeks would not be entitled to a credit under *N.J.S.A.* 34:15–40 against any dependency award based on the remaining funds received in the third party action that are in excess of the sum considered for the Section 20 settlement. The balance then remaining belonged to Kibble to dispose of as he desired. *Roberts, supra,* 104 *N.J.Super.* at 7–9, 248 *A.*2d 280. Ordinarily, the widow and children have no legal rights in the fund created by the employee's third-party action. *Id.* at 9, 248 *A.*2d 280. Similarly, "the employer has no right to be subrogated to any part of this fund by way of reimbursement therefrom for any dependency payments made to the widow and children." *Ibid.* However, that general rule may not be applicable to the present case because the third-party settlement included any potential wrongful death claims.

A more difficult question is whether petitioner's signature on the release executed in the third-party action that foreclosed any wrongful death action should bar her dependency claim. Weeks had the right to file a wrongful death cause of action against the appropriate defendants. *N.J.S.A.* 34:15–40(f); *Errickson v. Supermarkets Gen. Corp.*, 246 *N.J.Super.* 457, 463–65, 587 *A.2d* 1322 (App.Div.1991). It has now been deprived of that right. Also, if Weeks ultimately is required to pay dependency benefits, it "would be subrogated to the rights of the widow … to assert a claim against the third-party tortfeasor under the Death Act." *Roberts, supra,* 104 *N.J.Super.* at 8, 248 *A.2d* 280; *see United States Casualty Co. v. Hercules Powder Co.*, 4 *N.J.* 157, 166, 72 *A.2d* 190 (1950); *Prudential Ins. Co. v. Laval,* 131 *N.J. Eq.* 23, 26, 23 *A.2d* 908 (Ch.Div.1942). Because Weeks would step into the shoes of petitioner if it paid dependency benefits, *New Amsterdam Casualty Co. v. Popovich,* 18 *N.J.* 218, 227–28, 113 *A.2d* 666 (1955), it has been deprived of its right of subrogation as well. Although I express no opinion regarding the impact that releasing the tortfeasors from a wrongful death cause of action should or may have on the dependency claim, the relinquishment of that right could serve as an additional reason for either partially or totally barring the present dependency claim. *See generally Sperling v. Board of Review,* 156 *N.J.* 466, 720 *A.2d* 607 (1998); *Longworth v. Van Houten,* 223 *N.J.Super.* 174, 538 *A.2d* 414 (App.Div.1988).

V

Contrary to the majority's holding, *ante* at 194 – 95, 735 *A.2d* at 1151 – 52, the petitioner has not argued that a remand is required because a widow should be required to consent to a Section 20 settlement that disposes of a potential dependency claim. Petitioner's informed consent argument is limited to the requirement that "the [worker] understands that he or she is waiving his rights and the rights of his dependents, not only for this claim, but for all future claims arising out of this condition or any other condition not yet manifest." Although I would not require the consent of a

worker's spouse before the worker can validly waive dependency claims, in the future the procedure for handling Section 20 settlements that has existed at least since 1980 should be improved in spite of the fact that a worker can waive future dependency claims. In *Alfone*, the Court permitted injured plaintiffs to extinguish wrongful death causes of action but modified the common law to require tighter requirements to achieve that result. Similarly, to implement the legislative intent the Division should improve its procedures to include more procedural safeguards for Section 20 settlements where waiver of future dependency benefits are involved.

The form presently used by the Division seems adequate when its scope is explained to the petitioner-worker on the official court record. However, the form should be modified to make certain that the worker is fully advised of all rights he or she is waiving. In the future, when dependency claims are intended to be waived, the spouse should be required to attend the Section 20 proceedings, if practical, to hear the explanation and to acknowledge on the record that he or she has been informed about the waiver of dependency benefits and its consequences. When the spouse cannot appear at the hearing, counsel for the worker should inform the spouse, in a manner approved by the Division as to form and content, that the worker intends to waive dependency benefits and the consequences of that waiver. The Judge of Compensation should use non-technical language and explain to the petitioner-worker and the spouse the preclusive effect the Section 20 settlement will have on any potential dependency claims. The polestar should be to ensure that when a worker waives dependency benefits, he or she has done so knowingly and intelligently in each case and that the spouse is aware that potential dependency claims have been extinguished. The Judge of Compensation should not hesitate to reject a Section 20 settlement if a release of death benefits is inappropriate in the sense of not being fair or just or that the spouse has not been fully informed.

The majority decides that even if its holding is deemed to be procedural, the new rule of law should be retroactively applied at least to the present case. *Ante* at 195–96, 735 *A*.2d at 1152. The threshold question of whether retroactivity or prospectivity should be applied to the ruling in a case depends first on whether that ruling is the equivalent of a new rule of law. *State v. Purnell,* 161 *N.J.* 44, 53–54, 735 *A*.2d 513 (1999). Although the general rule in civil cases is retrospectivity, *Coons v. American Honda Motor Co.,* 96 *N.J.* 419, 425, 476 *A*.2d 763 (1984), *cert. denied,* 469 *U.S.* 1123, 105 *S.Ct.* 808, 83 *L.Ed.*2d 800 (1985), sound policy reasons can justify applying a new procedural requirement only prospectively. *See Mirza v. Filmore Corp.,* 92 *N.J.* 390, 397, 456 *A*.2d 518 (1983). The critical factors to be considered are public policy, reliance, and the effect the new rule will have on the administration of justice. *Fischer v. Canario,* 143 *N.J.* 235, 245–49, 670 *A*.2d 516 (1996).

The requirement that the spouse of a worker be informed when a Section 20 settlement includes a waiver of dependency claims is not a new rule of law. The procedural change that I have proposed is intended to vindicate the existing practice from misunderstanding and misrepresentation concerning what the parties intended. The suggested requirement of new procedural safeguards also is born out of a desire to modernize the practice by eliminating the archaic and overbroad stereotype that a husband need not consult with his wife before settling a case in which she is not a party. The procedure for determining whether dependency benefits have been waived should be the same regardless of whether the claimant is a widow or widower. *Tomarchio v. Township of Greenwich,* 75 *N.J.* 62, 78, 379 *A*.2d 848 (1977). The procedural modifications I have proposed today are intended solely to inform the worker and his or her spouse what is being waived rather than make the spouse's consent a precondition to the waiver of dependency benefits as part of a Section 20 settlement. Consequently, under my analysis, the retroactivity issue is not presented in this case. *State v. Knight,* 145 *N.J.* 233, 249, 678 *A*.2d 642 (1996); *Coons, supra,* 96 *N.J.* at 430, 476 *A*.2d 763.

Even if the procedural requirements I propose were deemed to be tantamount to a new rule of substantive law, it should only be applied prospectively "to avoid any possible confusion in the administration of the [WCA]." *Tomarchio, supra,* 75 *N.J.* at 78, 379 *A.*2d 848. Additionally, employers and their insurance carrier have justifiably relied on the releases executed at the time of the Section 20 settlement to extinguish future dependency claims. *Barone v. Harra,* 77 *N.J.* 276, 281, 390 *A.*2d 571 (1978); *Darrow v. Hanover Tp.,* 58 *N.J.* 410, 419, 278 *A.*2d 200 (1971). "[R]eliance is the primary factor justifying adoption of a rule of prospectivity." *Barone, supra,* 77 *N.J.* at 280, 390 *A.*2d 571; *Darrow, supra,* 58 *N.J.* at 415–19, 278 *A.*2d 200.

## VI

As modified, I would affirm the judgment of the Appellate Division.

POLLOCK and GARIBALDI, JJ., join in this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices HANDLER, O'HERN and STEIN—4.

*For modification and affirmance*—Justices POLLOCK, GARIBALDI, and COLEMAN—3.